UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CB DISTRIBUTORS, INC., | ) | Civil No.__________________ |
| Plaintiff, | ) | |
| vs. | ) | Civil Action |
| | ) | **JURY TRIAL DEMANDED** |
| EVEREADY BATTERY CO., INC., | ) | **Filed Under Seal** |
| Defendant. | ) | |

**COMPLAINT**

Plaintiff CB Distributors, Inc. ("CB") states the following for its Complaint against Defendant Eveready Battery Co., Inc. ("Eveready").

**JURISDICTION AND VENUE**

1. CB's claims arise from Defendant's unlawful, post-settlement communications with CB's customers, in violation of the terms of a written Settlement Agreement between CB and Eveready resolving a prior lawsuit filed in this Court. CB asserts claims against Eveready for breach of contract, trade libel, and tortious interference. CB seeks injunctive relief to compel Eveready to prohibit Eveready from further violating the Settlement Agreement, to retract and/or cure the unlawful communications sent to CB's customers, and to prevent Eveready from disseminating further violative communications to CB's customers, as well as compensatory damages, punitive damages, recovery of attorney's fees, and all other available relief.

2. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction), as a result of the related nature of CB's claims herein to those brought previously by Eveready in Case No. 4:10-cv-01055-CEJ, which, as described in detail below, was fully and finally settled by the parties pursuant to a written Settlement Agreement. The Settlement Agreement provides that disputes shall be heard by this Court.

3. On information and belief, this Court has personal jurisdiction over the Defendant because Eveready is located within this judicial district, has made numerous sales within this judicial district, and has committed the acts described herein within this judicial district. Furthermore, Eveready previously consented to the jurisdiction of this Court by executing the Settlement Agreement between itself and CB.

4. Venue is proper under 29 U.S.C. § 1391(b) because, on information and belief, a substantial part of the events giving rise to the claims occurred in this district.

## JURY TRIAL DEMANDED

5. CB demands a jury on all triable issues.

## THE PARTIES

6. CB is a Wisconsin corporation with its principal place of business located at 2500 Kennedy Drive, Beloit, Wisconsin 53511.

7. Eveready is a Missouri corporation with its principal place of business located in St. Louis County, Missouri.

## FACTS COMMON TO ALL CLAIMS

8. CB is a wholesale distributor of consumer products serving the convenience store industry, and carries numerous product lines, including alkaline batteries.

9. CB acquires the goods it offers for sale from numerous sources, including some that are located outside the United States.

10. During 2008, CB entered into an arrangement to import Eveready batteries from an exporter/distributor located outside the United States. The exporter/distributor represented to CB that the Eveready products it was offering were authentic and provided a warranty.

11. In reliance on the representations of the exporter/distributor, CB placed multiple orders for Eveready batteries with the exporter/distributor in 2008 and 2009, which were duly delivered to CB's warehouse in the United States and thereafter offered by CB for sale to its distributor and retail customers.

12. In May 2010, CB was informed by a customer, SJL Distributing, L.L.C. ("SJL"), a Missouri-based company, that Eveready had sent it a letter alleging that the Eveready batteries it was selling to its customers, which SJL had purchased from CB, were in some way counterfeit goods.

13. In June 2010, Eveready filed a Complaint in this District under Case No. 4:10-cv-01055 against CB, SJL, and R.L.L.M. Holding Company, L.L.C. (one of SJL's retail customers) for federal trademark counterfeiting and infringement, federal unfair competition and false designation of origin, and, against SJL alone, common law tortious interference (the "Prior Action").

14. After discussions between CB and Eveready, and with no admission of fault or liability by any party, the parties negotiated a full and final settlement of all claims as to all parties the Prior Action. A written Confidential Settlement Agreement ("CSA") was fully executed in counterparts by the parties on September 24, 2010.

15. A copy of the Confidential Settlement Agreement executed on September 24, 2010 by Donna F. Schmitt, Senior Trademark Counsel for Eveready, is annexed hereto as **Exhibit 1**.

16. Pursuant to Paragraph 4 of the CSA, the parties agreed to a recall procedure in which CB would deliver a specific written notice to all customers that had purchased the suspect Eveready batteries from CB. The jointly negotiated and agreed-upon notice, referred to in Paragraph 4 of the CSA as the "Approved Recall Notice," was attached to the CSA as Exhibit C.

17. The list of CB customers that had purchased the allegedly counterfeit Eveready batteries, and were to receive the Approved Recall Notice from CB, was attached to the CSA as Exhibit B-1.

18. Upon their compliance with the terms of the Approved Recall Notice, CB's customers would be released from liability pursuant to Paragraph 10 of the CSA.

19. Eveready expressly acknowledged in Paragraph 10 of the CSA that the list of CB's customers in Exhibit B-1 was confidential business information, and agreed not to make any written or oral disclosure of this information "except to its counsel for the purpose of enforcing the terms of this Agreement and/or enforcement of Eveready's rights, without limitation, pursuant to all available legal theories and actions."

20. In accordance with Paragraph 4 of the CSA, plaintiff CB prepared and delivered the Approved Recall Notice to all customers listed in Exhibit B-1 of the CSA on October 4, 2010, along with a copy to Eveready's counsel.

21. The Approved Recall Notice was the sole form of notice to CB's customers contemplated by the CSA. It was sent on CB's letterhead. Eveready had no right to communicate with CB's customers under the CSA.

22. On November 1, 2010, CB was informed by Buyer's Wholesale Dist., Inc. ("Buyer's Wholesale") of Indianapolis, Indiana, one of the CB customers listed on Exhibit B-1 of the CSA, that it had received a four-page written communication directly from Eveready (the "Unlawful Eveready Notice"). A copy of the Eveready Notice is annexed hereto as **Exhibit 2**.

23. The Unlawful Eveready Notice consists of the following: (i) a letter dated October 28, 2010 signed "Donna F. Schmitt, Senior Trademark Counsel for Eveready" (the "Schmitt Letter"); (ii) an agreement to be filled out, signed, and returned by the recipient to Eveready by the recipient; (iii) a page depicting six Eveready battery packages entitled "*Exhibit 1 Energizer Counterfeits Representative Samples Note: Products include AA - 2 and 4 packs; AAA - 2 and 4 packs; C - 2 packs; 9V - 1 pack*"; and (iv) a copy of the Approved Recall Notice previously sent by CB to its customers on October 4, 2010.

24. The Schmitt Letter claims that "[t]o effectuate the Recall, Eveready asks that you sign and return to us the attached Agreement within three (3) days of receipt of this letter."

25. The terms of the CSA did not condition the Recall or the Release of CB's customers upon execution of this supplemental, or any other, agreement with Eveready.

26. The Schmitt Letter claims that "[a]ll Customers to whom you sold or otherwise distributed such Energizer branded products will be directly liable for trademark infringement unless and until they too comply with this Recall process."

27. The terms of the CSA did not condition the Recall or the Release of CB's customers upon compliance with the Unlawful Eveready Notice.

28. The Schmitt Letter claims that "examples of these counterfeits are shown on the attached Exhibit 1"; while the Exhibit is entitled in pertinent part "*Energizer Counterfeits Representative Samples*."

29. Prior to issue being joined in the Prior Action, a settlement was entered into by the parties which resolved all claims as to all parties before any adjudication of the authenticity of the Eveready products at issue. The CSA expressly states that there was no admission of fault or liability by either party.

30. The Unlawful Eveready Notice was prepared and sent by Eveready without notice to CB and without CB's consent.

31. The Unlawful Eveready Notice was prepared by Donna F. Schmitt, Senior Trademark Counsel for Eveready ("Schmitt"), the person who executed the CSA on behalf of Eveready.

32. On November 5, 2010, CB was informed that SJL, another CB customer listed on Exhibit B-1, and a named defendant in the Prior Action, also received a copy of the Unlawful Eveready Notice directly from Eveready.

33. As a signatory to the CSA, Schmitt was fully aware of the terms, conditions and contents of the CSA.

34. The CSA was in full effect at all times prior to, during, and after the delivery of the Unlawful Eveready Notice by Eveready, and remains in full effect to date.

35. CB has been and remains in full compliance with the terms of the CSA.

36. Eveready has breached the terms of the CSA through its unauthorized use of the confidential list of CB's customers at Exhibit B-1 and the unlawful and unauthorized communication with CB's Customers.

37. By breaching the CSA and sending the Unlawful Eveready Notice, Eveready made unauthorized, false, fraudulent and libelous statements to CB's customers regarding CB, the terms of the CSA and the nature of the goods at issue.

38. Without justification, privilege or any legal right, Eveready made these statements willfully, with knowledge of the falsity of these statements and the harm that they would cause to CB.

39. As a proximate result of Eveready's unlawful actions as alleged herein, CB has suffered and will continue to suffer irreparable harm and economic damage to its business, goodwill, reputation, and profits.

40. CB has no adequate remedy at law, and will continue to suffer irreparable harm unless Eveready is temporarily, preliminarily and permanently enjoined by this Court.

**COUNT I**
**BREACH OF CONTRACT**

41. CB repeats and realleges the foregoing paragraphs as if fully set forth herein.

42. As set forth above, Eveready voluntarily entered into a written contractual agreement with CB. Under the CSA, Eveready agreed to dismiss all its claims of federal trademark counterfeiting and infringement, federal unfair competition and false designation of origin, and common law tortious interference asserted against all defendants in the Prior Action. In exchange, CB agreed, among other things, to disclose on a confidential basis its customers to whom it sold the suspect batteries, to send the Approved Recall Notice to its customers, to engage in a recall process relating to the suspect batteries, to stop selling the suspect batteries, to turn over its remaining inventory of the suspect batteries to Eveready, to provide Eveready with information on the purchase and sale of the suspect batteries, and compensate Eveready for its investigative costs and fees.

43. Under the CSA, Eveready had no right to communicate with CB's customers that were disclosed under the CSA.

44. CB did not authorize Eveready to send the Unlawful Eveready Notice.

45. After learning that the Eveready had send the Unlawful Eveready Notice, CB, by letter dated November 2, 2010, demanded that Eveready cease and desist from making any further communications to its customers and further violating the CSA.

46. By written response dated November 3, 2010, Eveready refused to cease communicating with CB's customers, admitted that it had made the communications and stated that it would continue to make more and further communications to CB's customers.

47. Eveready's unauthorized communications with CB's customers and its unauthorized use and disclosure of the confidential information provided pursuant to the CSA constitute a breach of the CSA, causing irreparable injury and damages to CB.

48. As a proximate result of Eveready's unlawful actions as set forth herein, CB has suffered and will continue to suffer irreparable harm and economic damage to its business, goodwill, reputation, and profits.

49. As a proximate result of Eveready's unlawful actions as set forth herein, CB is also entitled to compensatory damages and an award of attorneys' fees and costs and set forth in the CSA.

50. Eveready was aware that if it did not adhere to the terms of the CSA, there was an expectation that its actions could result in the loss of revenues and other injuries to CB and, therefore, CB is also entitled consequential damages proximately resulting from Eveready's unlawful conduct and breaches of the CSA.

**COUNT II**
**TORTIOUS INTERFERENCE**

51. CB repeats and realleges paragraphs 1 through 40 as if fully set forth herein.

52. At all relevant times, CB had existing business relationships with the customers that it disclosed on as confidential basis under the CSA to Eveready.

53. Based on the terms of the CSA, Eveready knew that CB had an existing contract and/or business relationship with the customers disclosed to Eveready under the CSA.

54. By sending the Unlawful Eveready Notice as aforesaid, Eveready intentionally interfered with CB's contracts and/or business relationships inducing or causing a breach of those contracts and/or relationships.

55. Eveready had no justification or privilege for its actions.

56. As a proximate result of Eveready's unlawful and intentional actions as set forth herein, CB has suffered and will continue to suffer irreparable harm and economic damage to its business, goodwill, reputation, and profits.

57. CB is also entitled to punitive damages as a result of Eveready's egregious conduct which was intentionally malicious, willful and wanton.

## COUNT III
## TRADE LIBEL

58. CB repeats and realleges paragraphs 1 through 40 as if fully set forth herein.

59. By sending the Unlawful Eveready Notice as aforesaid, Eveready has made false and defamatory statements regarding CB and its business that are injurious to the reputation and livelihood of CB.

60. Among such statements made by Eveready were the false and defamatory statements contained within the Unlawful Eveready Notice itself, including the following:

(i) CB had engaged in the sale of counterfeit goods as represented by the "Exhibit 1" of the Unlawful Eveready Notice;

(ii) That CB's customers who received the Unlawful Eveready Notice would be directly liable for trademark infringement unless they complied with the process set forth in the Unlawful Eveready Notice; and

(iii) That the recipient's participation in the recall and subsequent release was conditioned on the completion and signing of a written contract with Eveready.

61. Eveready's false and defamatory statements were intentionally and purposefully disseminated by Eveready by sending the Unlawful Eveready Notice directly to CB's customers, as well as by Eveready's directive within the Unlawful Eveready Notice that the recipients send the Unlawful Eveready Notice to their own customers.

62. Eveready published its false and defamatory statements regarding CB with knowledge that such statements were false.

63. Despite demanding that Eveready cease and desist from making any further such communications to its customers, Eveready refused to cease making such communications, admitted that it had made the unlawful communications and affirmed it would continue to make more and further communications to CB's customers.

64. As a proximate result of Eveready's unlawful and intentional actions as set forth herein, CB has suffered and will continue to suffer irreparable harm and economic damage to its business, goodwill, reputation, and profits.

65. CB is also entitled to punitive damages as a result of Eveready's egregious conduct which was intentionally malicious, willful and wanton.

**WHEREFORE**, CB requests the following relief:

A. For judgment:

1. Declaring that Eveready breached the CSA;

2. Declaring that Eveready tortiously interfered with contracts and business relations between CB and its customers;

3. Declaring that Eveready committed trade libel through the dissemination of its Unlawful Eveready Notice to CB's customers and others;

B. For temporary, preliminary and permanent injunctions enjoining Eveready, and its employees, agents, affiliates, and all persons acting in concert or participation with it, and any entity owned or controlled by Defendant, who receives actual notice of the order by personal service or otherwise, from:

1. Dissemination of the Unlawful Eveready Notice to anyone in any form or manner, including but not limited to physical delivery, facsimile, or electronic transmission;

2. Making any further unauthorized disclosure or use of the confidential information disclosed under the CSA including, but not limited to, the list of CB's customers attached to the CSA as Exhibit B-1;

3. Communicating in any form or manner with any of CB's customers including, but not limited to, CB's customers identified on the list attached to the CSA as Exhibit B-1; and

4. Compelling Eveready to take corrective measures as requested and approved by CB.

C. For an award of:

1. Compensatory damages, including all monetary and consequential damages, as available, in an amount to be determined at trial;

2. Punitive damages in an amount to be determined at trial;

3. Interest, including pre-judgment interest, on the foregoing sums, in accordance with applicable law;
4. Reasonable attorneys' fees and expenses as required by the CSA;
5. CB's costs of suit; and
6. Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

HEPLERBROOM LLC

By: /s/Gerard T. Noce

GERARD T. NOCE #27636MO
gtn@heplerbroom.com
WAYNE D. SKIGEN #116374
wds@heplerbroom.com
800 Market Street
Suite 2300
St. Louis, MO 63101
314/241-6160
314/241-6116 – Facsimile
Attorneys for Plaintiff